IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN H. HAWKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 13-2044-JDT |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AFFIRMING COMMISSIONER'S DECISION

This action was filed by the Plaintiff, John H. Hawkins, to obtain judicial review of the Defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Plaintiff's applications for benefits were denied initially and upon reconsideration by the Social Security Administration. At the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). (R. 307-329.) On April 3, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 9-21.) The Appeals Council denied Plaintiff's request for review on November 29, 2012. (R. 5-7). Thus, the ALJ's decision became the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. The reviewing court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause

for a rehearing." *Id.* Judicial review is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604–08 (6th Cir. 2009).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Perales*, 402 U.S. at 401; *Kyle*, 609 F.3d at 854; *Lindsley*, 560 F.3d at 604-05. The Commissioner, not the reviewing court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on November 19, 1957, and was fifty-four years old at the time of the ALJ's decision. (R. 21, 70, 310.) He has a high school education. (R. 20, 310.) Plaintiff has past relevant work as a security guard. (R. 20, 76-77.) He alleges that he became disabled on November 30, 2003, due to mental problems, bipolar disorder, paranoid schizophrenia and pain in his back, legs and feet. (R. 42, 75, 90.)

The ALJ found that Plaintiff met the insured status requirements through November 3, 2003, and had not engaged in substantial gainful activity since the alleged onset date. (R. 14.) The ALJ also found that Plaintiff's degenerative joint disease of the knees, history of treatment for depression and history of alcohol dependence were severe impairments but that his impairments did not, either

alone or in combination, meet or equal the severity of any listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the listing of impairments. (R. 14-15.) The ALJ determined that Plaintiff had the residual functional capacity to lift a maximum of twenty-five pounds frequently and fifty pounds occasionally; the ability to understand, remember and carry out only simple job instructions; and should have no significant interaction with the general public. (R. 15-20.) The ALJ further found that Plaintiff was unable to perform his past relevant work as a security guard. (R. 20.) Using the Medical-Vocational Rules ("the grids"), Rule 203.22 supported a finding that Plaintiff was not disabled; therefore, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined there are unskilled jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 20-21.) Accordingly, Plaintiff was not under a disability as defined in the Act at any time through the date of the April 3, 2012 decision. (R. 21.)

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The initial burden of going forward is on the claimant to show that he is disabled from engaging in her former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in the applicable regulations:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

3

2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.
4. An individual who can perform work that he has done in the past will not be found to be disabled.
5. If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. *Id.*; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). Here, the analysis proceeded to step five, where the ALJ determined that, although Plaintiff cannot perform his past relevant work, there are jobs existing in significant numbers in the national economy that he can perform.

Plaintiff does not contest the ALJ's findings with regard to his physical impairments. However, he contends the ALJ erred in failing to find that his mental impairments met Listing 12.04 (Affective Disorders), and/or Listing 12.08 (Personality Disorders). The burden of proof at the listing level of the sequential evaluation process is on the claimant. In order for a claimant to show that his impairment matches a listing, the impairment must meet specified medical criteria. *See Zebley v. Sullivan*, 493 U.S. 521, 530 (1990). The paragraph A criteria of the Listing for Mental Disorders are used to establish the existence of a mental impairment (diagnosis), not severity. The Commissioner does not dispute that Plaintiff has met the paragraph A criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (2011).

The paragraph B criteria of Listings 12.04 and 12.08 provide a means of assessing the severity of a claimant's mental impairment. (*Id.*) At the time of the hearing in this case, the

4

paragraph B criteria of both § 12.04 and § 12.08 could be satisfied by showing at least two of the following:[1]

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., pt. 404, subpt. P, app. 1, §§ 12.04B, 12.08 (2011). Based on the opinion of Dr. R. Scott Beebe, Ph.D, a licensed psychologist, Plaintiff contends that he met the paragraph B criteria.

Dr. Beebe performed a consultative evaluation of Plaintiff on February 5, 2010. (R. 243-249.) He diagnosed Plaintiff with bipolar disorder with psychotic features, posttraumatic stress disorder ("PTSD") and alcohol abuse by history. (R. 249.) He found that Plaintiff had mild to moderate limitations in understanding and remembering and only mild limitations in concentration, persistence or pace. (*Id.*) Dr. Beebe also concluded that Plaintiff had moderate to marked limitations in social interactions and marked restrictions in adaptability. (*Id.*) However, the ALJ stated that it appeared Dr. Beebe's "diagnoses were based on the claimant's report of experiences and symptoms, which are of (at best) dubious reliability, rather than on documented ongoing clinical signs of the diagnosed conditions." The ALJ also noted that Dr. Beebe did not have an opportunity to review Plaintiff's entire medical record. Therefore, the ALJ did not give significant weight to Dr. Beebe's opinion. (R. 18-19.)

Based on the evidence in the record as a whole, the ALJ found that Plaintiff had mild limitations in activities of daily living and moderate limitations in social functioning. (R. 15.) In making those findings, the ALJ relied on Plaintiff's report that he took care of his own personal

---

[1] The Listing for Mental Disorders has been somewhat revised since the ALJ's decision in this case. *See* 81 Fed. Reg. 66,138-01, 2016 WL 5341732 (Sept. 26, 2016).

needs, did housework and yard work, including mowing, although it took him longer because of knee pain, shopped for groceries, and cared for his dog. Even after his alleged disability onset date, Plaintiff worked for his cousin in a home maintenance business and also for another individual mowing grass, trimming trees, and picking up trash. (R. 19, 312-314.) The ALJ also relied on the report of Dr. Jean E. Vil, M.D., an examining psychiatrist with the Veterans Administration ("VA") who in April 2009 found Plaintiff to be well-groomed, calm and pleasant, with good insight and judgment. (R. 18, 168.)

The ALJ further determined that Plaintiff had less than marked restrictions in concentration, persistence or pace. Treatment records from the Millington Counseling Center (R. 115-119, 122-123) and the Veterans Administration (R. 230) support that determination, indicating that Plaintiff's attention and concentration were normal and that he had no major deficits in memory.

Plaintiff contends that Dr. Beebe's statement that, "[t]he Claimant appears to have a long history of unstable moods" (R. 249), is sufficient to demonstrate that Plaintiff had episodes of decompensation. However, "unstable moods" are not necessarily episodes of decompensation. Plaintiff points to no actual medical evidence in the record to support a finding that he suffered from repeated episodes of decompensation of extended duration.

Dr. Beebe's opinion also does not sufficiently support a finding that Plaintiff met the paragraph C criteria of Listing 12.04, an alternative means of assessing the severity of disorders in that category. At the time of the hearing, the paragraph C criteria required:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>     1. Repeated episodes of decompensation, each of extended duration; or
>     2. A residual disease process that has resulted in such marginal adjustment

> that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04 (2011). As stated, there is no evidence in the record that Plaintiff has suffered repeated episodes of decompensation. Furthermore, although Dr. Beebe opined that Plaintiff had marked difficulties in various areas, there is nothing in his report to support a finding that "even a minimal increase in mental demands or change in the environment would be predicted to cause" Plaintiff to decompensate. There is also no evidence whatsoever in the record that Plaintiff had a history of "inability to function outside a highly supportive living arrangement" or a "continued need for such an arrangement."

Plaintiff also contends that the ALJ improperly discounted the report of Renee Brotherton, a licensed clinical social worker ("LCSW"), by commenting that she was "presumably paid for the report" and was "not an acceptable medical source under Social Security Ruling 09-3p." (R. 19.) Plaintiff was evaluated by Ms. Brotherton on August 26, 2011. (R. 289-291.) She opined that Plaintiff's memory appeared to be "significantly impaired" because his aunt, who accompanied him to the interview, "disputed many of his dates and time frames." (R. 291.)

The ALJ's statement that Ms. Brotherton was not an acceptable medical source who could provide a medical opinion is correct. *See* 20 C.F.R. § 404.1513(a) (2011). While he also commented on the fact that her assessment of Plaintiff was obtained in an effort to support Plaintiff's disability claim, the ALJ also noted that "the evidence is certainly legitimate and deserves due consideration." (R. 19.) The regulations provide that evidence from "other sources" may be used "to show the severity" of a claimant's impairments "and how it affects [his] ability to work." 20

C.F.R. § 404.1513(d) (2011). The ALJ considered Ms. Brotherton's report but gave it little weight because it was "unsupported by longitudinal clinical findings" and "inconsistent with the claimant's lack of treatment." (R. 18-19.) This was not error.

Plaintiff contends the evaluation of his non-exertional limitations was not adequate, arguing the ALJ erred in not finding that pain, difficulty with concentration and thoughts of suicide significantly affected Plaintiff's ability to work. However, Plaintiff does not point to any evidence in the record to support the assertion that his pain significantly affects his ability to work.[2] With regard to concentration, the ALJ considered the evidence as a whole and found Plaintiff only moderately restricted in concentration, persistence and pace.[3] This finding is supported by the record. (R. 115-119, 122-123, 230.)

Plaintiff has also pointed to no evidence in the record that his suicidal thoughts significantly affect his ability to work. Dr. Vil, the VA psychiatrist, noted in 2009 that Plaintiff denied having suicidal ideations (R. 168), as did Ms. Brotherton in 2011 (R. 291). Dr. Beebe's assessment indicates that while Plaintiff reported thinking about suicide "all the time" (R. 245), he had no plans or intent (R. 248). Therefore, the ALJ's assessment of Plaintiff's non-exertional limitations as not significantly affecting his ability to perform unskilled work was not erroneous and is supported by substantial evidence.

---

[2] As indicated, Plaintiff has not challenged the ALJ's findings with regard to the severity of his physical impairments. Therefore, he has not demonstrated that he had any impairment that would be expected to produce pain that significantly limits his ability to work.

[3] Even Dr. Beebe, upon whose report Plaintiff heavily relies, found he had only mild limitations in the area of concentration, persistence and pace. (R. 249.)

While Plaintiff also contends the ALJ's use of the "grids" to find him not disabled was erroneous, the Sixth Circuit has held that:

> it is *only* when "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level that nonexertional limitations must be taken into account and a nonguideline determination made.". . . Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level.

*Kimbrough v. Sec'y of Health and Human Servs.*, 801 F.2d 794, 796-97 (6th Cir. 1986) (emphasis in original) (quoting *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)). In this case, the ALJ's assessment that Plaintiff's non-exertional limitations do not significantly limit his ability to perform unskilled work is supported by substantial evidence. Therefore, the ALJ's use of the "grids" also was not error.

Plaintiff further contends that the ALJ should not have considered his alcoholism in evaluating his mental impairments. Pursuant to 42 U.S.C. § 423(d)(2)(C), "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Drug addiction or alcoholism is material if the individual would still be found disabled even if he stopped using alcohol or drugs. 20 C.F.R. §§ 404.1535 and 416.935.

The ALJ in this case stated, "In view of the lack of medically documented ongoing manifestations of genuine psychosis or bipolar disorder, it appears that whatever mental limitations that claimant may have are largely if not exclusively due to his substance abuse." (R. 20.) Plaintiff contends this was error, pointing out Dr. Beebe's statement that Plaintiff's "[h]istory of alcohol

abuse appears to have contributed to his problem but does not appear to be the primary cause of his emotional instability." (R. 249.) Plaintiff testified at the hearing that he only drank "once or twice a week" (R. 316), and his aunt testified that he was sober at that time (R. 327).

The ALJ acknowledged that Plaintiff had reported periods of sobriety but noted his twenty-five year history of serious alcohol abuse. (R. 20.) While Plaintiff did testify that he drank "once or twice a week," the ALJ noted that Plaintiff also testified to getting drunk at a party approximately eighteen days prior to the hearing and admitted that he had "more or less continued drinking." (R. 20, 315-316.) Nevertheless, "giving the claimant the benefit of the doubt," the ALJ found Plaintiff limited to work involving the ability to understand, remember, and carry out only simple instructions with no significant interaction with the public. (R. 20.) Plaintiff has failed to demonstrate this was error.

In Plaintiff's final assignment of error, he asserts the ALJ was biased. The argument is based on the ALJ's comment at the hearing that he did "not want to hear from" Plaintiff's aunt (R. 324-325); Plaintiff also asserts the ALJ's failure to discuss her testimony in his opinion was error. As the Commissioner points out, notwithstanding the ALJ's seemingly impatient comment, he did allow Plaintiff's aunt, Lyla Maxine Stanford, to testify at the hearing. (R. 325-328.) Thus his comment that he did not want to hear from her is insufficient to demonstrate that he was biased or that the hearing was fundamentally unfair.

In addition, the Court finds the ALJ's failure to discuss Ms. Stanford's testimony in his opinion was harmless error. While she testified that Plaintiff could not take care of himself (R. 325-326), that testimony is inconsistent with the other evidence in the record, including Plaintiff's own report of his daily activities (R. 248). Ms. Stanford also testified that Plaintiff often got angry and

"start[ed] screaming, and hollering, and throwing a fit." (R. 326.) However, medical evidence in the record shows that Plaintiff was generally pleasant and cooperative with fair or good judgment, relating politely and appropriately. (R. 115-124, 168, 291.) Thus, discussion of her testimony by the ALJ in his opinion would not have changed the outcome of the case. *See Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) ("But even if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination'" (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2016).).

The Court finds there is substantial evidence in the record supporting the ALJ's decision and that the decision is not contrary to law. Therefore, the decision of the Commissioner is AFFIRMED.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE